**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES** | : | **CRIMINAL ACTION** |
| **of AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WILLIE BUTLER** | : | **No. 16-071** |

**M E M O R A N D U M**

PRATTER, J.                                                        AUGUST 4, 2016

**INTRODUCTION**

Mr. Butler, who is charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), has moved to suppress evidence of a Ruger 9 mm handgun and ammunition recovered by police at the time of his arrest, arguing that they are fruits of an illegal seizure. The Government opposes the motion and offers several arguments for the admissibility of the evidence. Following a hearing on July 14, 2016, the Court will deny Mr. Butler's motion.

**BACKGROUND**

On the evening of December 13, 2015, two Philadelphia police officers, Officers Donohue and Strain, were patrolling a high-crime neighborhood in North Philadelphia near Hunting Park, an area where, just a few months earlier, a high-profile murder had occurred. The officers observed a car with Virginia plates parked on the left side of Wingohocking Street next to Hunting Park, with a man, later identified as Willie Butler, sitting in the driver's seat with the engine running. The officers put their patrol car in reverse until they were behind and to the right of the parked car. As they were reversing, Officer Strain told Officer Donohue that he saw the vehicle's occupant making a furtive movement towards the driver's side floorboard. The officers then activated their lights and attempted to run the vehicle's plates.

1

According to the hearing testimony, when the officers activated their lights, Mr. Butler got out of the car, leaving the driver's side door open and the car running, and started walking toward the Park.  Officer Donohue got out of the police cruiser and told Mr. Butler to stop.  Mr. Butler complied, and Officer Donohue frisked his waistband.  The officers then brought Mr. Butler back to the car and asked him to place his hands on it.  While Officer Strain stayed with Mr. Butler, Officer Donohue walked over to the open driver's side door and saw a firearm on the driver's side floorboard in plain view.  Officer Donohue told Officer Strain what he found, and the officers then placed Mr. Butler in handcuffs.  After Mr. Butler was placed in the back of the patrol car, Officer Donohue recovered the weapon and handed it off to his partner, who cleared the loaded gun.  The officers then drove Mr. Butler to the station.

Mr. Butler was later charged with possessing a firearm as a convicted felon.  He now moves to suppress the gun and ammunition recovered at the scene of his arrest, arguing that he was stopped without reasonable suspicion and arrested without probable cause and that, therefore, the gun is the fruit of an illegal seizure.  The Government contends that the officers had reasonable suspicion to stop Mr. Butler, that Mr. Butler abandoned the gun before he was seized, and that the gun was in plain view and, in any case, would have inevitably been discovered.

## DISCUSSION

Mr. Butler claims that he was legally parked on the side of the road, and that his car was running because it was winter.  He argues that he was seized when the officers activated their emergency lights, and that, at that time, the officers had no reasonable suspicion to detain him.  It is clear, however, that Mr. Butler was not seized for Fourth Amendment purposes until he had left his car, walked towards the Park, and responded to Officer Donohue's order to stop.

2

In *California v. Hodari D.*, 499 U.S. 621, 625-26 (1991), the Supreme Court held that a seizure occurs when there is either an application of physical force or a show of authority accompanied by submission.  In *Hodari D.*, the defendant and three or four other youths were huddled around a parked car ran when they saw two police officers walking their way.  *Id.* at 622.  They ran, and the officers gave chase.  The defendant kept running until one of the officers caught up to him and tackled him to the ground.  During the chase, the defendant tossed away a rock of crack cocaine.  The Supreme Court held that because the defendant did not submit when the officers gave chase, he was not seized until the officer used physical force to detain him.  *Id.* at 626.  Thus, the defendant abandoned the crack cocaine during the chase and before any seizure occurred, and the rock of crack cocaine was admissible, regardless of whether the officer had reasonable suspicion when he began his pursuit of the defendant.  *Id.* at 629.

Here, even assuming that the activation of lights was a "show of authority," Mr. Butler did not submit.  Indeed, he did the opposite:  He got out of the car and, leaving the car running and the driver's side door open, he walked away from the car and away from the police, towards a poorly lit park.  Thus, under *Hodari D.*, Mr. Butler was not seized until Officer Donohue directed him to stop and Mr. Butler complied.  By then, Mr. Butler had left the car and walked away from the gun, abandoning it.  Under *Hodari D.*, the gun and ammunition recovered from the car are admissible.

Nonetheless, the Government also argues that, even if the gun was not abandoned, the police had reasonable suspicion to stop Mr. Butler because by the time he was seized, he had made furtive movements near the floor of the vehicle and had then attempted to flee from the police in a high-crime area after dark, leaving behind a car that was still running with the driver's

3

side door wide open.  The Supreme Court has held that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000).  "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop."  *Id.*  The acts giving rise to reasonable suspicion need not be themselves criminal and may be capable of innocent explanation.  *United States v. Valentine,* 232 F.3d 350, 356 (3d Cir. 2000).  However, "[t]he officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch."  *United States v. Sokolow,* 490 U.S. 1, 7 (1989) (quotation marks omitted).  The "totality of the circumstances—the whole picture" must support a finding of reasonable suspicion.  *Id.*  Here, immediately after the police activated their lights, Mr. Butler got out of the car and began walking towards a poorly lit park, leaving the car running and the door open in a high crime area after dark.  Therefore, the Court agrees with the Government that at the time of the seizure – when Mr. Butler complied with Officer Donohue's order to stop – the officers had reasonable suspicion sufficient to justify their stop of Mr. Butler, and so, even if the gun was the fruit of a seizure, the seizure was lawful.

Finally, the Government argues that the gun should be admitted under the inevitable discovery rule because the gun would have been discovered regardless of whether the officers stopped Mr. Butler, given that he left the gun in plain view on the floorboard of a running car with an open driver's side door.  The inevitable discovery doctrine permits the introduction at trial of evidence obtained during an illegal search "if the government can prove that the evidence

would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police." *Nix v. Williams,* 467 U.S. 431, 447 (1984).  The Government can meet this burden by showing, by a preponderance of the evidence, "that the police, following routine procedures, would inevitably have discovered the evidence."  *United States v. De Reyes,* 149 F.3d 192, 195 (3d Cir. 1998) (reasoning that " '[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale [of the exclusionary rule] has so little basis that the evidence should be received.'" (internal citation omitted)).  Here, the Government has shown that the gun at issue would have been discovered with or without the stop of Mr. Butler.  Even if the officers had let Mr. Butler continue on his way after leaving the car, they certainly would have investigated a vehicle parked in a high-crime area that was left running with a door open, and because the gun was in plain view, they inevitably would have recovered the gun.  For all of these reasons, then, the Court will deny Mr. Butler's motion.

CONCLUSION

For the foregoing reasons, the Court will deny Mr. Butler's motion.  An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE